# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

DARWIN QUINONES-PIMENTEL, CO-
FOUNDER OF NAICOM CORPORATION AND
FOUNDER OF KIARAS, LLC; VICTOR VEGA-
ENCARNACION, CO-FOUNDER OF NAICOM
CORPORATION AND FOUNDER OF ARTIST
DESIGNS AND MANAGEMENT
CORPORATION ; NAICOM CORPORATION;
NAICOM DATA CENTER; ARTIST DESIGNS
AND MANAGEMENT CORPORATION;
KIARAS, LLC, ON THEIR OWN BEHALF.

**PLAINTIFFS,**

v.

NICHOLAS W. CANNON, ASSISTANT UNITED
STATES ATTORNEY; SEVERAL UNKNOWN
ASSISTANT UNITED STATES ATTORNEY
SUPERVISORS OF THE CRIMINAL DIVISION
FOR THE UNITED STATES ATTORNEYS
OFFICE FOR THE DISTRICT OF PUERTO RICO;
DOUGLAS A. LEFF, FBI SPECIAL AGENT IN
CHARGE OF SAN JUAN DIVISION; BRAD REX,
FBI SUPERVISORY SPECIAL AGENT; LANCE
LANGE, FBI SPECIAL AGENT; KEVIN REAVES,
FBI SPECIAL AGENT; ANDREW BAKER, FBI
SPECIAL AGENT; CHRIS KUHN, FBI SPECIAL
AGENT; CELIA MAHLER, FBI SPECIAL AGENT;
CLAY REHRIG, FBI SPECIAL AGENT; NOAH
EAMES, FBI SPECIAL AGENT; JUSTIN
TURNER, FBI SPECIAL AGENT; MARK
ETHERIDGE, FBI SPECIAL AGENT; CLINT
NAFAY, FBI SPECIAL AGENT; JUAN
GALARZA, FBI COMPUTER SCIENTIST; JASON

**Civil No. _____**

**[CIVIL RIGHTS COMPLAINT
FOR DAMAGES PURSUANT TO
BIVENS AND 28 U.S.C. § §1331
and 1343 (1)(3)(4)]**

**JURY TRIAL DEMANDED**

LOPEZ, FBI EVIDENCE TECHNITIAN;
SEVERAL UNKNOWN NAMED AGENTS OF
FEDERAL BUREAU OF INVESTIGATIONS;
BERT EICHHORN, NAGRASTAR
INVESTIGATOR; EMILY WRINKLE,
NAGRASTAR INVESTIGATOR; JORDAN
SMITH, NAGRASTAR INVESTIGATOR;
AND KEVIN GEDEON, DISH NETWORK
INVESTIGATOR.

**DEFENDANTS.**

## CIVIL RIGHTS COMPLAINT FOR DAMAGES

**TO THE HONORABLE COURT**:

Plaintiffs**, DARWIN QUINONES-PIMENTEL**, Co-Founder of Naicom Corporation

and Founder of Kiaras, LLC; NAICOM CORPORATION; **VICTOR VEGA-**

**ENCARNACION**, Co-Founder of Naicom Corporation AND Founder of Artist

Designs and Management Corporation, **NAICOM DATA CENTER**; **ARTIST**

**DESIGNS AND MANAGEMENT CORPORATION**; **KIARAS, LLC,** through the

undersigned counsel, and respectfully states, alleges, and prays:

## NATURE OF ACTION

### I. INTRODUCTION

1. This is a civil rights action for compensatory and punitive damages against the

defendants in their personal and individual capacities based on a conspiracy,

combination, and agreement, involving acts of gross unconstitutional misconduct

and abuse of process, which has resulted in a violation to the plaintiff's Fourth and

Fifth rights to be free from unreasonable search and seizures without probable

2

cause and warrantless search and seizures as secured under the Fourth and Fifth Amendment of the United States Constitution.

2. On August 27, 2019, the Department of Justice, through the Federal Bureau of Investigation, applied for two Search and Seizure Warrants (1) Case No. 19-1680 (SCC), in the mater of the search of the premises of Building Centro de Seguro's, 701 Ponce de Leon, Suite 208, San Juan, Puerto Rico 00907, ; and (2) Case No. 19-1679 (SCC), in the matter of the search matter the premises of Villa Fontana, 4SS N2 Via Josefina, Carolina, PR.

3. The Search Warrants were authorized by U.S. Magistrate Judge Silvia Carreño-Coll commanding only the "FBI" to execute the warrant on or before September 4, 2019 against the Building Centro de Seguro's, 701 Ponce de Leon, Suite 208, San Juan, Puerto Rico 00907; and the premises of Villa Fontana, 4SS N2 Via Josefina, Carolina, PR.

4. On August 27, 2019, the FBI executed the search warrants, in the company of Dish Network and Nagrastar investigators, and seized Documents, 2 Hard Drives, 2 USB Thumb Drives, 1 Cell Phone and 1 Tablet containing the company's trade secrets from Victor Vega Encarnacion, Darwin Quinones-Pimentel, Naicom Corporation, and Kiaras, LLC Offices located at Building Centro de Seguros, 701 Ponce de Leon, Suite 208, San Juan, Puerto Rico 00907, and from Naicom Data Center, located at Villa Fontana, 4SS N2 Via Josefina, Carolina, Puerto Rico. Thus, exceeding the scope of the search and seizure warrants, in that the Magistrate Judge who issued the warrant, did not

3

authorize the FBI to execute the warrant in the company of Naicom's competitors the Dish Network and Nagrastar Investigators.

5.  On August 27, 2019, the FBI also executed a warrantless search, in the company of Dish Network and Nagrastar investigators, at Artist Designs and Management Corporation, located at Building Centro de Seguros, 701 Ponce de Leon, **Suite 207**, San Juan, Puerto Rico 00907, without judicial authorization seizing private documents from Victor Vega and the company.

6.  On August 29, 2019 the FBI also executed another warrantless search, in the company of Dish Network and Nagrastar investigators, at Naicom's Data Center, located at located at Villa Fontana, 4SS N2 Via Josefina, Carolina, Puerto Rico, and knowingly and intentionally accessed the Naicom's Data Center Computers, Servers and other Hardware equipment containing the company trade secrets without authorization, seizing private information from the Plaintiffs.

7.  On September 6, 2019 the Plaintiff moved the District Court, through a Demand for Return of Property, contending that the underlying factual and evidentiary basis supporting the Affidavit upon which the issuance of the search and seizure warrant was issued, violated the probable cause constitutional requirement, in that the Affidavit contained deliberately and/or reckless false statements. This caused and was the moving force fort the Magistrate to believe probable cause existed, the likelihood that an offense had been committed, and that the search was going turn up the incriminating

4

evidence for criminal prosecution. The search and seizure execution did not turn up any kind of contraband or evidence of criminal activity.

8. At the aftermath, the Department of Justice and the FBI collapsed by its own wrongful weight, causing the search warrant against plaintiffs' be dismissed on the government's unopposed motion to plaintiffs demand for return of the property, informing the District Court that the government was going to return the property to Plaintiff, and the District Court on 11/05/2019, Dkt 13, ("ORDER re 12 Notice (Other), re 10 Report and Recommendation, re 1 Motion for Return of Property: NOTED. Claimant having waived the 14-day period to file objections to the Report and Recommendation (R&R), the Court adopted the R&R and ordered *the government to return the property listed in claimant's demand* (Docket No. 1)" pursuant to Rule 41 of the Federal Rules of Criminal Procedures.

9. Plaintiffs will establish by a preponderance of evidence that defendants acted individually and collectively in an unlawful and unconstitutional manner, violating Plaintiffs constitutional right to be free from unreasonable search and seizures and to be free from searches without a warrant authorized by an appropriate justice, as secured under the Fourth and Fifth Amendments of the United States Constitution, and redressable pursuant Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388, 91 S. Ct. 1999, 29 L. Ed. 2d 619 (1971). In Bivens, the Supreme Court established that a violation of a person's Fourth Amendment rights by federal officers, acting under color of

5

federal law, gives rise to a federal cause of action for damages for the unconstitutional conduct and victims of such violation have a right to recover damages against the officer in federal court.

## JURISDICTION AND VENUE

10. This complaint alleges unconstitutional misconduct while the defendants were acting under color of Federal Law, redressable under Bivens v. Six Unknown Agents of the Federal Bureau of Narcotics, 403, 388, 396-97 (1971). This court's subject matter jurisdiction is invoked under 28 U.S.C. Section (s) 1331 because the district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States; and section 1343 (1)(3)(4), pendent jurisdiction to hear and decide claims arising under state law.

11. Venue is proper in this Court under 28 U.S.C. § 1391(b)(2) this cause of action arose out of several incidents which events giving rise to the claims occurred in the Commonwealth of Puerto Rico, in the Jurisdiction of the United States District Court of Puerto Rico.   Furthermore, Venue is also invoked pursuant to  28 U.S.C. § 1391(e)(1)   since many of the defendants in this civil action are employees of the United States and were acting under color of legal authority when the constitutional cause of action accrued and a substantial part of the events or omissions giving rise to the claim occurred.

## PARTIES AND PARTICIPANTS

12. The plaintiff is Darwin Oscar Quinones-Pimentel, of legal age, resident of Canovanas, Puerto Rico and the United States of America.    Darwin Quinones-Pimentel is the Co-Founder of Naicom Corporation and Founder of Kiaras, LLC.

13. The plaintiff is Victor Vega-Encarnacion, of legal age, resident of San Juan, Puerto Rico, and the United States of America.  Victor Vega Encarnacion is the Co-Founder of Naicom Corporation and Artist Designs and Management Corporation.

14. Naicom Corporation was organized in 2016 as a corporation existing under the laws of the Commonwealth of Puerto Rico with its place of business located at Building Centro de Seguros, 701 Ponce de Leon, Suite 208, San Juan, Puerto Rico 00907.

15. Artist Designs & Management Corporation was organized in 2014 as a corporation existing under the laws of the Commonwealth of Puerto Rico with its place of business located at Building Centro de Seguros, 701 Ponce de Leon, Suite 207, San Juan, Puerto Rico 00907.

16. Kiaras, LLC was organized in 2010 as a corporation existing under the laws of the Commonwealth of Puerto Rico with its place of business located at Building Centro de Seguros, 701 Ponce de Leon, Suite 208, San Juan, Puerto Rico 00907.

17. Naicom's Data Center is a property belonging to Naicom's Corporation with its place of business located at Villa Fontana, 4SS N2 Via Josefina, Carolina, Puerto Rico, 00985.

18. Defendant Nicholas W. Cannon is and was at all times relevant herein, a resident of Puerto Rico, employed by the United States Government as Assistant United States Attorney in the District of P.R. As Assistant United States Attorney, Nicholas W. Cannon was appointed by the Attorney General to assist the United States Attorney for the District of Puerto Rico, and charged with the duties to investigate, collect, analyze and corroborate evidence in support of prosecutions in violation of the laws against the United States in the Criminal Division of the District of Puerto Rico. He was sworn under oath before taking office to execute faithfully his duties, the United States Laws, uphold Local Laws, and to abide by the United States Constitution. The defendant Nicholas W. Cannon participated individually and collectively with all the defendants in targeting the Plaintiffs into the criminal investigation which culminated in the execution of the unconstitutional warrant and warrantless search and seizure against Plaintiffs. His action violated Plaintiffs constitutional rights as secured under the Fourth and Fifth Amendment of the United States Constitution and clearly established law and is therefore liable pursuant to Bivens. He is sued in his personal and individual capacity as Assistant United States Attorney.

19. Several Unknown Assistant United States Attorney Supervisors of the Criminal Division for the United States Attorney's Office for the District of Puerto Rico who knowingly and/or with careless indifference directed and supervised the execution of the unlawful constitutional violations.

20. Defendant Douglas A. Leff was at all times relevant herein, a resident of Puerto Rico, and the FBI Special Agent in Charge of the San Juan Division. As the FBI Special Agent in Charge of the San Juan Division, Douglas A. Leff was responsible for overseeing and supervising all criminal investigations conducted by the FBI San Juan Division.    FBI Special Agent Douglas A. Leff was also charged with the duty and powers to enforce the criminal laws of the United States, to execute and serve search warrants, arrest warrants, and to make seizures of property. Douglas A. Leff was also responsible for reviewing, analyzing and discussing with the FBI Legal Counsel if the evidence collected during criminal investigations by his FBI Agents subordinates qualified as evidence supporting probable cause pursuant to Fourth Amendment constitutional standards in support of search warrant applications for criminal prosecutions in the District of Puerto Rico. He was sworn under Oath to faithfully execute the laws of the United States, uphold t local laws and to abide by the United States Constitution. The defendant Douglas A. Leff participated individually and collectively with all the defendants in targeting Plaintiffs into the criminal investigation which culminated in the execution of the unconstitutional warrant and warrantless search and seizure against Plaintiffs. His actions violated Plaintiffs constitutional rights as secured under the Fourth Amendment of the United States Constitution and clearly established law and is therefore liable pursuant to <u>Bivens.</u> He is sued in his personal and individual capacity as the FBI Special Agent in Charge of San Juan Division.

21. Defendant Brad Rex is and was at all times relevant herein, a resident of Puerto Rico, and the FBI Supervisory Special Agent in the San Juan Division. As the FBI Supervisory Special Agent in the San Juan Division Brad Rex was charged with the responsibility of supervising and assuring that the FBI Special Agents assigned to his squad will follow the rule of law.   FBI Special Agent Brad Rex was also charged with the duty and powers to enforce the criminal laws of the United States, to execute and serve search warrants, arrest warrants, and to make seizures of property.  FBI Special Agent Brad Rex was also responsible for reviewing, analyzing and discussing with the FBI Legal Counsel if the evidence collected during criminal investigations by his FBI Agents subordinates qualified as evidence supporting probable cause under Fourth amendment constitutional standards in support of search warrants applications for criminal prosecutions in the District of Puerto Rico. He was sworn under Oath to faithfully execute the United States Laws, uphold local laws and to abide by the United States Constitution. The defendant Brad Rex participated individually and collectively with all the defendants in targeting Plaintiffs criminal investigation which culminated in the execution of the unconstitutional warrant and warrantless search and seizure against Plaintiffs.  His actions violated Plaintiffs constitutional rights as secured under the Fourth Amendment of the United States Constitution and clearly established law and is therefore liable pursuant to Bivens. He is sued in his personal and individual capacity as Supervisory Special Agent in the San Juan Division.

22. Defendant Lance Lange is and was at all times relevant herein a resident of Puerto Rico and Special Agent in the San Juan Division. As Special Agent in the San Juan Division Lance Lange was charged with the duty and powers to enforce the criminal laws of the United States, to execute and serve search warrants, arrest warrants, and to make seizures of property. And as such was sworn under Oath to faithfully execute the United States Laws, uphold the local laws and to abide by the United States Constitution. The defendant Lance Lange participated individually and collectively with all the defendants in targeting Plaintiffs criminal investigation which culminated in the execution of the unconstitutional warrant and warrantless search and seizure against Plaintiffs. His actions violated Plaintiffs constitutional rights as secured under the Fourth Amendment of the United States Constitution and clearly established law and is therefore liable pursuant to Bivens. He is sued in his personal and individual capacity as Special Agent in the San Juan Division.

23. Defendant Kevin Reaves is and was at all times relevant herein, a resident of Puerto Rico, and Special Agent in the San Juan Division. As Special Agent in the San Juan Division Kevin Reaves was charged with the duty and powers to enforce the criminal laws of the United States, to execute and serve search warrants, arrest warrants, and to make seizures of property. And was sworn under Oath to faithfully execute the United States Laws, uphold the local laws and to abide the United States Constitution. The defendant Kevin Reaves participated individually and collectively with all the defendants in targeting Plaintiffs criminal

investigation which culminated in the execution of the unconstitutional warrant and warrantless search and seizure against Plaintiffs. His actions violated Plaintiffs constitutional rights as secured under the Fourth Amendment of the United States Constitution and clearly established law and is therefore liable pursuant to Bivens. He is sued in his personal and individual capacity as Special Agent in the San Juan Division.

24. Defendant Andrew Baker is and was at all times relevant herein, a resident of Puerto Rico and Special Agent in the San Juan Division. As Special Agent in the San Juan Division Andrew Baker was charged with the duty and powers to enforce the criminal laws of the United States, to execute and serve search warrants, arrest warrants, and to make seizures of property. He was sworn under Oath to faithfully execute the United States Laws, uphold local laws and to abide by the United States Constitution. The defendant Andrew Baker participated individually and collectively with all the defendants in targeting Plaintiffs criminal investigation which culminated in the execution of the unconstitutional warrant and warrantless search and seizure against the Plaintiffs. His actions violated Plaintiffs constitutional rights as secured under the Fourth Amendment of the United States Constitution and clearly established law and is therefore liable pursuant to Bivens. He is sued in his personal and individual capacity as Special Agent in the San Juan Division.

25. Defendant Chris Kuhn is and was at all times relevant herein, a resident of Puerto Rico, and Special Agent in the San Juan Division. As Special Agent in the San Juan

Division Chris Kuhn was charged with the duty and powers to enforce the criminal laws of the United States, to execute and serve search warrants, arrest warrants, and to make seizures of property. He was sworn under Oath to faithfully execute the United States Laws, uphold the local laws and to abide the United States Constitution. The defendant Chris Kuhn participated individually and collectively with all the defendants in targeting Plaintiffs criminal investigation which culminated in the execution of the unconstitutional warrant and warrantless search and seizure against the Plaintiffs. His actions violated Plaintiffs constitutional rights as secured under the Fourth Amendment of the United States Constitution and clear established law and is therefore liable pursuant to Bivens. He is sued in his personal and individual capacity as Special Agent in the San Juan Division.

26. Defendant Celia Mahler is and was at all times relevant herein, a resident of Puerto Rico, and Special Agent in the San Juan Division. As Special Agent in the San Juan Division Celia Mahler was charged with the duty and powers to enforce the criminal laws of the United States, to execute and serve search warrants, arrest warrants, and to make seizures of property. She was sworn under Oath to faithfully execute the United States Laws, uphold the local laws and to abide the United States Constitution. The defendant Celia Mahler participated individually and collectively with all defendants in targeting Plaintiffs criminal investigation which culminated in the execution of the unconstitutional warrant and warrantless search and seizure against the Plaintiffs. Her actions violated Plaintiffs

constitutional rights as secured under the Fourth Amendment of the United States Constitution and clearly established law and is therefore liable pursuant to Bivens. She is sued in her personal and individual capacity as Special Agent in the San Juan Division.

27. Defendant Clay Rehrig is and was at all times relevant herein, a resident of Puerto Rico, and Special Agent in the San Juan Division. As Special Agent in the San Juan Division Clay Rehrig was charged with the duty and powers to enforce the criminal laws of the United States, to execute and serve search warrants, arrest warrants, and to make seizures of property. He was sworn under Oath to faithfully execute the United States Laws, uphold local laws and to abide by the United States Constitution. The defendant Clay Rehrig participated individually and collectively with all the defendants in targeting Plaintiffs criminal investigation which culminated in the execution of the unconstitutional warrant and warrantless search and seizure against Plaintiffs. His actions violated Plaintiffs constitutional rights as secured under the Fourth Amendment of the United States Constitution and clearly established law and is therefore liable pursuant to Bivens. He is sued in his personal and individual capacity as Special Agent in the San Juan Division.

28. Defendant Noah Eames is and was at all times relevant herein, a resident of Puerto Rico, and Special Agent in the San Juan Division. As Special Agent in the San Juan Division Noah Eames was charged with the duty and powers to enforce the criminal laws of the United States, to execute and serve search warrants, arrest

warrants, and to make seizures of property. He was sworn under Oath to faithfully execute the United States Laws, uphold local laws and to abide by the United States Constitution. The defendant Noah Eames participated individually and collectively with all the defendants in targeting Plaintiffs criminal investigation which culminated in the execution of the unconstitutional warrant and warrantless search and seizure against the Plaintiffs. His actions violated Plaintiffs constitutional rights as secured under the Fourth and Fifth Amendment of the United States Constitution and clearly established law and is therefore liable pursuant to Bivens. He is sued in his personal and individual capacity as Special Agent in the San Juan Division.

29. Defendant Justin Turner is and was at all times relevant herein, a resident of Puerto Rico, and Special Agent in the San Juan Division. As Special Agent in the San Juan Division Justin Turner was charged with the duty and powers to enforce the criminal laws of the United States, to execute and serve search warrants, arrest warrants, and to make seizures of property. He was sworn under Oath to faithfully execute the United States Laws, uphold local laws and to abide by the United States Constitution. The defendant Justin Turner participated individually and collectively with all the defendants in targeting Plaintiffs criminal investigation which culminated in the execution of the unconstitutional warrant and warrantless search and seizure against Plaintiffs. His actions violated Plaintiffs constitutional rights as secured under the Fourth and Fifth Amendment of the United States Constitution and clearly established law and is therefore liable

pursuant to Bivens. He is sued in his personal and individual capacity as Special Agent in the San Juan Division.

30. Defendant Mark Etheridge is and was at all times relevant herein, a resident of Puerto Rico, and Special Agent in the San Juan Division. As Special Agent in the San Juan Division Mark Etheridge was charged with the duty and powers to enforce the criminal laws of the United States, to execute and serve search warrants, arrest warrants, and to make seizures of property. He was sworn under Oath to faithfully execute the United States Laws, uphold local laws and to abide by the United States Constitution. The defendant Mark Etheridge participated individually and collectively with all the defendants in targeting Plaintiffs criminal investigation which culminated in the execution of the unconstitutional warrant and warrantless search and seizure against Plaintiffs. His actions violated Plaintiffs constitutional rights as secured under the Fourth and Fifth Amendment of the United States Constitution and clearly established law and is therefore liable pursuant to Bivens. He is sued in his personal and individual capacity as Special Agent in the San Juan Division.

31. Defendant Clint Nafay is and was at all times relevant herein, a resident of Puerto Rico, and Special Agent in the San Juan Division. As Special Agent in the San Juan Division Clint Nafay was charged with the duty and powers to enforce the criminal laws of the United States, to execute and serve search warrants, arrest warrants, and to make seizures of property. He was sworn under Oath to faithfully execute the United States Laws, uphold local laws and to abide by the

United States Constitution.   The defendant Clint Nafay participated individually and collectively with all the defendants in targeting Plaintiffs criminal investigation which culminated in the execution of the unconstitutional warrant and warrantless search and seizure against the Plaintiffs.  His actions violated Plaintiffs constitutional rights as secured under the Fourth and Fifth Amendment Amendment of the United States Constitution and clearly established law and is therefore liable pursuant to Bivens. He is sued in his personal and individual capacity as Special Agent in the San Juan Division.

32.  Defendant Juan Galarza is and was at all times relevant herein, a resident of Puerto Rico, and the FBI Computer Science Officer in the San Juan Division. As the Computer Science Officer in the San Juan Division Juan Galarza was charged with the duty and powers to enforce the criminal laws of the United States, to execute and serve search warrants, arrest warrants, and to  make  seizures  of  property. He was sworn under oath to faithfully execute the United  States Laws, uphold  local laws and to abide by the United States Constitution.   The defendant Juan Galarza participated individually and collectively with all the defendants in targeting Plaintiffs  criminal investigation which culminated in the execution of the unconstitutional warrant and warrantless search and seizure against  Plaintiffs. His actions violated Plaintiffs constitutional rights as secured under the Fourth Amendment of the United States Constitution and clearly established law and is therefore liable pursuant to Bivens. He is sued in his personal and individual capacity as Special Agent in the San Juan Division.

33.   Defendant Jason Lopez is and was at all times relevant herein, a resident of Puerto Rico, and the FBI Evidence Technician in the San Juan Division. As the FBI Evidence Technician in the San Juan Division Jason Lopez was charged with the duty and powers to enforce the criminal laws of the United States, to execute and serve search warrants, arrest warrants, and to make seizures of property. He was sworn under Oath to faithfully execute the United States Laws, uphold local laws and to abide by the United States Constitution.   The defendant Jason Lopez participated individually and collectively with all the defendants in targeting Plaintiffs criminal investigation which culminated in the execution of the unconstitutional warrant and warrantless search and seizure against the Plaintiffs. His actions violated Plaintiffs constitutional rights as secured under the Fourth and Fifth Amendment of the United States Constitution and clearly established law and is therefore liable pursuant to Bivens. He is sued in his personal and individual capacity as Special Agent in the San Juan Division.

34.   Several Unknown Named Agents of Federal Bureau of Investigations who also participated in the unconstitutional warrants and actions described herein..

35.   At all times pertinent herein, these defendants acted under color of law, statute, ordinances, regulations, policies, and customs of the United States Government.

36.   Defendant, Jordan Smith is and was at all times relevant herein a resident of Parker, Colorado, and was employed by Nagrastar as Manager of Field Security and Investigations and Senior Anti-Piracy Investigator.   Jordan Smit was responsible for conducting investigations of satellite signal theft, IKS and IPTV

18

streaming piracy, and responsible for all case management including collecting, recording, organizing, preserving and analyzing evidence obtained through Nagrastar investigation methods, and for interviewing and interrogating potential suspects in anticipation for prosecution through the Federal Bureau of Investigations of crimes involving Copy Right Infringements, Circumvention of Protected Systems, fraud, tv-piracy and cybercrimes. The defendant Jordan Smith participated individually and collectively with all the defendants in targeting Plaintiffs criminal investigation which culminated in the execution of the unconstitutional warrant and warrantless search and seizure against Plaintiffs. His action violated Plaintiffs constitutional rights as secured under the Fourth Amendment of the United States Constitution and clearly established law and is therefore liable pursuant to Bivens. He is sued in his personal and individual capacity as a Federal Actor for participating in the unlawful and warrantless search and seizures executed against Plaintiffs.

37. Defendant, Bert Eichhorn, is and was at all times relevant herein, a resident of Denver, Colorado, employed by Nagrastar as the Manager of Field Security & Investigations. Bert Eichhorn is and was responsible for executing anti-piracy operations, the anti-streaming investigations, for monitoring the content recognition testing and enforcement, for conducting corporate investigations, surveillance, and software piracy investigations. Bert Eichhorn is and was also responsible for collecting, recording, organizing, preserving and analyzing evidence obtained through Nagrastar investigation methods, and for interviewing

and interrogating potential suspects in anticipation for prosecution through the Federal Bureau of Investigations of crimes involving Copy Right Infringements, Circumvention of Protected Systems, fraud, tv-piracy and cybercrimes. The defendant Bert Eichhorn participated individually and collectively with all the defendants in targeting Plaintiffs criminal investigation which culminated in the execution of the unconstitutional warrant and warrantless search and seizure against Plaintiffs. His actions violated Plaintiffs constitutional rights as secured under the Fourth Amendment of the United States Constitution and clearly established law and is therefore liable pursuant to Bivens. He is sued in his personal and individual capacity as a Federal Actor for participating in the unlawful and warrantless search and seizures executed against Plaintiffs.

38. Emily Wrinkle is and was at all times relevant herein, a resident of Denver, Colorado, employed by Nagrastar as the Manager of Field Security & Investigations. Emily Wrinkle is responsible for investigating and analyzing illegal streaming/pirating of Dish Network content. Emily R. Wrinkle is and was also responsible for conducting investigations of fraudulent accounts using "watermark" tests, internal databases, internet search engines, targeted websites, forums and social media, and collecting, recording, organizing, preserving and analyzing evidence obtained through Nagrastar investigation methods, and for interviewing and interrogating potential suspects in anticipation for prosecution through the Federal Bureau of Investigations of crimes involving Copy Right Infringements, Circumvention of Protected Systems, fraud, tv-piracy and

cybercrimes.   The defendant Emily Wrinkle participated individually and collectively with all the defendants in targeting  Plaintiffs criminal investigation which culminated in the execution of the unconstitutional warrant and warrantless search and seizure against  Plaintiffs.  Her actions violated Plaintiffs constitutional rights as secured under the Fourth and Fifth Amendment of the United States Constitution and clearly established law and is therefore liable pursuant to <u>Bivens.</u> She is sued in her personal and individual capacity as a Federal Actor for participating in the unlawful and warrantless search and seizures executed against the Plaintiffs.

39.   Defendant, Kevin Gedeon, is and was at all times relevant herein, a resident of Lone Tree, Colorado, employed by Dish Network as the Manager of Fraud Investigations.  Kevin Gedeon is and was responsible for investigating the illegal interception, decryption and distribution of satellite transmissions and counterfeit equipment throughout the United States, U.S. Virgin Islands, Puerto Rico, Canada and Mexico.  Kevin  Gedeon  is and was also responsible for collecting, recording, organizing, preserving and analyzing evidence obtained through Nagrastar investigation methods, and for interviewing and  interrogating potential suspects in anticipation for prosecution through the Federal Bureau of Investigations of crimes involving Copy Right Infringements, Circumvention of Protected Systems, fraud, tv-piracy and cybercrimes.   The defendant  Kevin Gedeon participated individually and collectively with all the defendants in targeting  Plaintiffs criminal investigation which culminated in the execution of the unconstitutional

warrant and warrantless search and seizure against Plaintiffs. His actions violated Plaintiffs constitutional rights as secured under the Fourth and Fifth Amendment of the United States Constitution and clearly established law and is therefore liable pursuant to <u>Bivens.</u> He is sued in his personal and individual capacity as a Federal Actor for participating in the unlawful and warrantless search and seizures executed against the Plaintiffs.

**FACTUAL ALLEGATIONS[1]**

## II.   <u>NAICOM'S GENESIS</u>

40. Sometime during the years 2002-2012, Naicom's President and Chief Executive Officer, Darwin Quinones-Pimentel ("Darwin"), a veteran systems architect with expertise in coding, application design, defined architectures and success project leadership and many other extraordinary skills developed an Internet Multicast Distribution System. The intellectual property was identified as the Dynamic Internet Semantic Multicast Environment and named DISME. The DISME code sources have been kept confidential under the Federal Defend Trade Secrets Act ("DTSA") (18 U.S.C. § 1836). The DISME proprietary solution enables the broadcast media via the internet and create an IPTV

---

[1] Please take Judicial notice that the record containing the evidence supporting factual allegations in this Civil Complaint are found in the Motion for Demand For Return of Property in the form of Attachments 1 through 33 filed in miscellaneous Case No. [19-mc-308 (FAB)]  See Federal Rules of Civil Procedure Rule 10 Form of Pleadings (c) Adoption by Reference; Exhibits. A statement in a pleading may be adopted by reference elsewhere in the same pleading or in any other pleading or motion. A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes.  Id.

service to distribute Live-Video Television Content (media) via the internet and private networks, although experts in the telecommunications industry claimed it was impossible.

41. On April 9, 2012, the Federal Communications Commission (FCC), issued its Second Report of the Video Programing Accessibility on the Twenty-First Century Act of 2010, recognizing and encouraging the implementation of distribution of Digital Broadcast Television using Internet Protocol Television (IPTV) for customers in the United States.

42. In 2016, all DISME Technology alfa and beta tests were completed, and Darwin and Victor Vega Encarnacion (Naicom's Founders) founded Naicom Corporation, a Network & Internet Communication Platform that delivers live Television, Video on Demand content via private fiber, internet and wireless network to subscribers worldwide instant access to their favorite TV Shows, Movies, Music/Videos on Demand and Live Sports & Music events through our Set-Top-Box using the Internet Protocol Television and TV Everywhere (TVE) on any mobile device.

43. In 2016, Naicom founders duly registered in the State Department of Puerto Rico Naicom Corporation as a closed corporation business company doing business in Puerto Rico and complied with all the requirements to perform as a legitimate IPTV business.

44. In 2016, Naicom Corporation also requested the manufacture of its own brand

set top boxes for end users through Informir LLC.

45. In 2016, Naicom Corporation also acquired the programing licenses to distribute television media and video on demand content in United States, Puerto Rico and Virgin Islands through worldwide television network companies and in 2017, Naicom Corporation became a member of the National Rural Telecommunications Cooperative "NRTC".

46. In 2016, Naicom Corporation began exploring the search of potential business negotiations with other cable tv companies and executed Naicom's Business Executive Summary and Valuation for potential Investors.

47. On January 6, 2017 Naicom Corporation submitted a request to have Apple Corporation place its Naicom TV App in Apple's AppStore. Apple Corporation's legal division requested Naicom Corporation to produce all the licenses authorizing the programing distribution available to Naicom's subscribers via Naicom TV TVE function at iPhone Cellular phones.

48. On February 16, 2017 Apple Corporation approved Naicom Corporation App for Apples' AppStore as Naicom TV App.

49. On December 15, 2017 Sams Club approved Naicom Corporation to officially launch and distribute in their retail stores the Naicom's IPTV Set Top Box which offered the distribution of tv programming to customers in Puerto Rico.

III. **THE NEGOTIATIONS WITH CLARO PUERTO RICO**

50. In 2017, CLARO Puerto Rico began negotiations with Naicom Corporation to

distribute Naicom Set Top Boxes to their customers.

51. Claro represented to Naicom Corporation that it had approximately 320,000 internet subscribers that could not subscribe to Claro's IPTV services because Claro's internet distribution to those residences delivered only 8 Megabytes and Claro's IPTV Set Top Box required 60 Megabytes to adequately upload the Claro's IPTV distribution programing.

52. During the negotiation process Naicom Corporation and Claro Puerto Rico executed a mutual NDA agreement prior to having the executive members meeting to discuss and analyze business information involving the letter of intent and the resellers agreement contents.

53. After extensive business negotiations Claro's Product Development Officer Anibal Rios represented to Naicom executives that the Claro-Naicom business alliance represented to Claro business projections of over $10,000,000 of monthly gross revenue for the first year and over $13,000,000 for the second year just by penetrating Claro's corporate and residential subscribers in Puerto Rico.

54. On the other hand, the Claro-Naicom business alliance represented to Naicom business projections to achieve 100,000 Corporate subscribers, plus another 150,000 residential subscribers, projecting a monthly income revenue of $9,000,000 in the first year, and $12,000,000 the second in gross sales to Claro's subscribers and Naicom's new customers.

55. Upon information and belief, Claro had a contract with Dish Network Satellite

TV, where Dish Network was providing the TV programming to Claro's internet subscribers which could not subscribe to Claro's IPTV services and the Naicom deal represented a contract cancelation threat to Dish Network's contract with Claro, and Claro was also considering to shut down its IPTV business division for loss of revenue.

56. Mr. Carlos Garcia of Claro Puerto Rico assisted to several meetings during the Claro-Naicom deal negotiations since he was Claro's IPTV business Manager. During these meetings Mr. Carlos Garcia became privy to the details of the Claro-Naicom deal would leave him jobless if Claro opted at the end to shut down the IPTV division he managed.

57. Upon information and belief Mr. Carlos Garcia fears moved him to alert the executives of Dish Network Puerto Rico that Claro-Naicom's IPTV deal would require the cancelation of Dish Network Satellite TV contracts with Claro and even he could lose his job. The Naicom-Claro IPTV deal news caused Dish Network great animosity towards Naicom TV in the industry of Cable and IPTV market.

58. Upon information and belief, Mr. Carlos Garcia convened the executives members of Dish Network and convinced them that Naicom TV was an IPTV pirate company because he had sent Claro's employees to photograph Naicom's Data Center and the way Naicom established its satellite dishes lock angle indicated that Naicom dishes were being used for TV piracy.

59. Naicom's Data Center employees caught Claro's employees photographing

Naicom's Data Center and the photos and the issue was brought to Claro's Puerto Rico President Enrique Ortiz.

60. August 14, 2018, after a year of meetings, the Naicom-Claro IPTV negotiation was a done deal. Nevertheless, for reasons unbeknownst to Naicom Corporation's executive officers, Claro mysteriously disappeared from the table of negotiations and never informed Naicom Corporation why they pulled out of the deal.

61. On August 27, 2019 the FBI in the company of Dish Network and Nagrastar investigators raided Naicom's Corporation and Data Center to execute a search warrant at its premises, shut down Naicom TV and seized all its computers, servers and hardware under a criminal investigation that alleged Darwin Quinones and Victor Vega were running an IPTV pirate company.

### III.   THE DISH NETWORK INVESTIGATION.

62. On August 7, 2017, the NagraStar investigating defendants instructed Brain Parsons to purchase a Naicom TV Set Top Box receiver to conduct tests and monitor the programming offered by Naicom.

63. According to NagraStar and Dish Network defendants their investigation revealed that the receiver provided access to approximately 43-channels-including channels such as Disney, TBS, ESPN, CNN, HBO, Showtime, and Cinemax.

64. The NagraStar and Dish Network investigating defendants also downloaded the Naicom TV application through Apples' AppStore, which required a

27

registration to enable the subscriber to create its login credentials as the receiver and provided access to approximately 42 channels.

65. The NagraStar and Dish Network investigating defendants also tested Naicom TV several times to identify if it was providing DISH programming and *in each case the test revealed no DISH content.*

66. Upon information and belief, NagraStar and Dish Network investigating defendants also contacted several Media Companies Content providers to inquire as to whether Naicom had the appropriate licensing contracts to distribute its programming and on each occasion these defendants were informed that Naicom Corporation was authorized to distribute its content.

67. Upon information and belief, Dish Network and NagraStar investigating defendants also discovered that Naicom's TV technology was a threat to Dish Network and Sling to the future competition for subscribers in Puerto Rico and the United States.

68. Upon information and belief, based on the above information, Dish Network and Nagrastar investigators filed a complaint with the Federal Bureau of Investigations alleging that Naicom Corporation was running an IPTV pirate operation.

69. Upon information and belief, the motive behind Dish Network and Nagrastar investigators filing the complaint against Naicom was to secure a joint criminal investigation with the FBI, to secure a search warrant to enter Naicom's Data

Center and seized Naicom's computers, servers and other hardware containing the companies trade secrets under the ruse of assisting the FBI in discovering incriminating evidence to appropriate themselves of Naicom's proprietary intellectual property and dismantle Naicom Corporation.

IV.  **THE FBI AND THE UNITED STATES ATTORNEY'S OFFICE INVESTIGATION AND INVOLVEMENT WITH THE CONTENTS OF THE AFFIDAVIT FILED UNDER OATH AND AFFIRMATION IN SUPPORT OF THE SEARCH WARRANT APPLICATION FOR JUDICIAL AUTHORIZATION.**

70. Upon information and belief, sometime during the month of September 2017 and throughout 2018 Dish Network Investigator defendant Kevin Gedeon and Nagrastar Investigators defendants Jordan Smith, Bert Eichhorn and Kimberly Wrinkle met with defendant Douglas A. Leff, the FBI Special Agent in Charge of the San Juan Division to discuss the criminal investigation of Victor Vega and Darwin Quinones Naicom's IPTV pirate operation.

71. Upon information and belief, the defendant Douglas A. Leff arranged a meeting between Dish Network and Nagrastar Investigators defendants Kevin Gedeon, Jordan Smith, Bert Eichhorn and Kimberly Wrinkle and defendants Brad Rex, the FBI Supervisory Special Agent of the Cyber Task Force to discuss the details of the criminal investigation towards the targets identified as Darwin Quinones and Victor Vega who were allegedly running an IPTV pirate operation through a company named Naicom Corporation.

72. Upon information and belief, the defendant Douglas A. Leff requested defendant Brad Rex to keep him informed of the developments of the

29

investigation and collection of criminal evidence to discuss the same with defendant Nicholas W. Connor for criminal prosecution.

73. Upon information and belief, the defendant Brad Rex launched the investigation and instructed the FBI Cyber Task Force Special Agents defendants Kevin Reaves, Andrew Baker, Chris Kuhn, Celia Mahler, Clay Rehrig, Noah Eames, Justin Turner, Mark Etheridge, Clint Nafay, Juan Galarza, Jason Lopez, and Several Unknown Named Agents of Federal Bureau of Investigations to work with the agent assigned to the case defendant Lance Lange and Dish Network and Nagrastar Investigators defendants Kevin Gedeon, Jordan Smith, Bert Eichhorn and Kimberly Wrinkle in the criminal investigation of Darwin Quinones and Victor Vega IPTV pirate distribution through Naicom.

74. Upon information and belief, the criminal investigation lasted two years from 2017 through 2019, and most of the evidence collected was furnished to the FBI by the defendants Kevin Gedeon, Jordan Smith, Bert Eichhorn and Kimberly Wrinkle.

75. Upon information and belief, defendants Douglas A. Leff, Brad Rex, Lance Lange, Kevin Reaves, Andrew Baker, Chris Kuhn, Celia Mahler, Clay Rehrig, Noah Eames, Justin Turner, Mark Etheridge, Clint Nafay, Juan Galarza, Jason Lopez, and Several Unknown Named Agents of Federal Bureau of Investigations never contacted Wapa TV, Disney, HBO, Turner, NBC, Condista, CBS, Telecinco, ABC, the National Rural Telecommunications Cooperative, Apple Corporation, Sam Club among other business associates of Naicom Corporation to investigate

and corroborate if in fact Naicom lacked the contract licenses to distribute the programming content through Naicom's TV Home Set Top Boxes, Apple's iPhone Naicom TV App, and the contract to distribute Naicom's TV Home Set Top Boxes at Sams Club retail stores other than relying blindly on the evidence provided by defendants Kevin Gedeon, Jordan Smith, Bert Eichhorn and Kimberly Wrinkle that Naicom's programming content was coming from Direct TV Set Top Box system circumvention, in violation of the copy rights laws of the United States.

76. Upon information and belief, at the final stage of the investigation defendants Kevin Gedeon, Jordan Smith, Bert Eichhorn and Kimberly Wrinkle met again with defendants Douglas A. Leff, Brad Rex, Lance Lange, Kevin Reaves, Andrew Baker, Chris Kuhn, Celia Mahler, Clay Rehrig, Noah Eames, Justin Turner, Mark Etheridge, Clint Nafay, Juan Galarza, Jason Lopez, and Several Unknown Named Agents of Federal Bureau of Investigation, to discuss the information of the investigatory files, logs, notes, memorandums, reports of investigation, photographs, videos, "the collected evidence," to have a final meeting with the defendant AUSA Nicholas W. Cannon and several unknown AUSA Supervisors of the Criminal Division in preparation of the Affidavit of defendant Lance Lange in support of the application for a search warrant.

77. Upon information and belief, the defendants, several unknown AUSA Supervisors of the Criminal Division in combination with defendant Douglas A. Leff authorized defendant AUSA Nicholas W. Cannon to approve defendant's Lance Lange's affidavit attached in support of the search warrant application to sign the

application for the judicial search warrant.

78.  On August 27, 2019, the defendant Nicholas W. Cannon met with defendant Lance Lange, approved and singed the application for the search warrant with the attached Affidavit filed under oath and affirmation that contained the following material misrepresentations and false statements, that:

a.  *He believed that there is probable cause to believe that violations of 17 U.S.C. § 506, 1201 (Copyright Infringement and Circumvention of Copyrighted Protected Systems), 18 U.S.C. § 23 19 (Criminal Infringement of a Copyright), and 18 U .S.C. § 1956 (Money Laundering) have been committed by Naicom Corporation and its founders Darwin Quinones and Victor Vega, located at THE PREMISES.* **See Affidavit in Support of Search Warrant page 2 ¶2. [19-mc-1680-SCC]**

b.  *He had evidence based on an investigation conducted by Nagrastar of Naicom's unauthorized use of Direct TV signal to distribute its programing to its paid subscribers.* **See Affidavit in Support of Search Warrant page 6-8. [19-mc-1680-SCC]**

c.  *On December 7, 2018 special agents of the Federal Bureau of Investigation (FBI) conducted a site survey of Naicom. A site survey is a common practice used in the FBI to gather intelligence on a location, the type of people there, and what activities are taking place. During the site survey, one of the agents of the FBI attempted to get a layout of inside the store location. The agent was taken to see Darwin Quinones and Victor Vega, the founders of Naicom. The agent did not disclose to Quinones and Vega that the corporation was being investigated. During the conversation , Vega and Quinones showed the agent their product on a TV screen in a conference room. Vega and Quinones showed many channels, movies, and features of their IPTV box. Throughout the conversation, Vega repeatedly told the agent that Naicom was a legal corporation and showed the agent a certificate from the National Cable Television Cooperative (NCTC) on the wall.* **See Affidavit in Support of Search Warrant page 2-9 ¶13. [19-mc-1680-SCC]**

d.  *Naicom was using the National Cable Television Cooperative ("CNCTC") certificate on the wall to create the appearance of Legal Access to Channels.* **See Affidavit in Support of Search Warrant page 9 ¶14. [19-mc-1680-SCC]**

e.  *A call to NCTC's management group by an agent of the FBI on December 19, 2018. The agent spoke with Brian Jones of NCTC, who stated that Naicom was not a member of NCTC. The only member of NCTC in Puerto Rico was Liberty Cable. Consequently, the company's stated basis for access to the 300 channels offered by Naicom appears to have been baseless.* **See Affidavit in Support of Search**

**Warrant page 10 ¶15. [19-mc-1680-SCC]**

f.   *FBI Special agents of the Federal Bureau of Investigation (FBI) contacted Phil Welcome, Director of Anti-Piracy Programs for HBO Latin America, and Ramiro Escudero, Director of Asset Protection at DirectTV. Both individuals independently verified that Naicom did not have any relationship with their respective organizations. Nonetheless, Naicom offers its subscribers access to multiple channels of HBO and Cinemax (which is owned by HBO).* **See Affidavit in Support of Search Warrant page 10 ¶16. [19-mc-1680-SCC]**

g.   *The external appearance of the Data Center offered indicia of piracy and based on information provided by NagraStar and information and analysis by FBI, the presence of the satellite dishes indicate that the operator of the dishes likely also operates one of two kinds of satellite piracy operations, IKS or LPTV, both of which require servers and other specialized equipment. Much of this equipment has no useful purpose outside of piracy and is usually located on-site. This equipment is used to access, decode, re-encode, and distribute pirated TV programming to paying customers and resellers, and the presence of a radio mast with microwave dishes at the Naicom facility is consistent with broadcasting and receiving television content over the air.* **See Affidavit in Support of Search Warrant page 13 ¶18. [19-mc-1680-SCC]**

h.   *There was suspicious reoccurring financial transactions between Naicom and other Business's at Naicom Headquarters Office revealing that Naicom Corporation, Darwin Quinones, and Victor Vega financial records yielded evidence of financial transactions between Naicom and other companies owned and operated by either Darwin Quinones or Victor Vega. The companies identified by the FBI include Artist Design Music Publishing Group, registration number 347442, owned by Victor Vega; Kiaras LLC, registration number 2858, owned by Darwin Quinones; SKYFACE Corporation, registration number 344985, owned by Victor Vega. The companies listed above don't appear to provide any services or have any online presence. The companies Listed above do not appear to make or receive revenue from known services. There are recurring transactions made between Naicom Corporation to Kiaras LLC in the amount of $2,000.00 each month. This behavior is consistent with money laundering, i.e. Quinones and Vega knowingly transferred money into and out of Naicom's accounts using unlawful proceeds from their satellite TV piracy business into other corporate accounts to disguise the nature of their income from an illegal TV piracy business.* **See Affidavit in Support of**

**Search Warrant page 14 ¶19. [19-mc-1680-SCC]**

i. *He had probable cause to believe that the computers or storage medium contained evidence of crimes and therefore, requested to seizure of computers, electronic storage, and forensic analysis that might serve as direct evidence of the crimes described on the warrant.* **See Affidavit in Support of Search Warrant page 16-22. [19-mc-1680-SCC]**.

j. *Requesting to seize things and all records relating to violations of 17 U.SC. §506, 17 U.SC. §1201, 18 U.SC. §2319 and 18 U.SC. §1956 which could be found at computers storages, satellite reception equipment, satellite receiver units, satellite dishes, all proprietary technology, routers, moderns, network equipment, financial records of Naicom Corporation, Artist Designs Music Publishing Group, Skyface Corporation, and Kiaras, LLC.* **See Attachment B of the Affidavit filed in Support of Search Warrant page 4-6. [19-mc-1680-SCC]**.

79. On August 27, 2019, the defendants AUSA Nicholas W. Cannon and Lance Lange met with Federal Magistrate Judge Silvia Carreño-Coll to discuss the contents of the affidavit being filed in support of the Warrant to search the premises of Naicom Corporation located at Building Centro de Seguros, 701 Ponce de Leon, Suite 208, San Juan, Puerto Rico 00907; and Naicom's Data Center located at Villa Fontana, 4SS N2 Via Josefina, Carolina, PR 00983.

80. During the meeting of August 27, 2019, the defendants AUSA Nicholas W. Cannon and Lance Lange assured Federal Magistrate Judge Silvia Carreño-Coll that the contents of the Affidavit filed in support of the Search Warrant application was truthful and supported probable cause for a search warrant under Fed.R.Crim.P. 41(c) to gather evidence of a crime; contraband fruits of a crime, or other items illegally possessed; property designed for use, intended for use,

34

or used in committing a crime against the United States laws as prohibited by Title 17 U.S.C. § 506 (Copyright Criminal Offenses), Title 18 U.S.C. § 2319 (Criminal Infringement of a Copyright), as well as Money Laundering, Wire Fraud, and Unlawful Access to Computer Systems knowing that the Magistrate Judge was going to rely on the oath and affirmation of defendant Lance Lange to authorize the search and seizure warrant.

81.   On August 27, 2019 U.S. Magistrate Judge Silvia Carreño-Coll signed the Affidavit in support of the application and commanded the "FBI" to execute the search warrant on or before September 4, 2019.

V.   **THE EXECUTION OF THE UNLAWFUL SEARCH AND SEIZURE WARRANT AND WARRANTLESS SEARCH AND SEIZURE.**

82.   On August 27, 2019, the defendants Brad Rex, Lance Lange, Kevin Reaves, Andrew Baker, Chris Kuhn, Celia Mahler, Clay Rehrig, Noah Eames, Justin Turner, Mark Etheridge, Clint Nafay, Juan Galarza, Jason Lopez, and Several Unknown Named Agents of Federal Bureau of Investigation in the company of defendants Kevin Gedeon, Jordan Smith, Bert Eichhorn and Kimberly Wrinkle acting as federal agents entered Naicom's Offices located at Building Centro de Seguros, 701 Ponce de Leon, Suite 207, San Juan, Puerto Rico 00907 and executed the unlawful search and seizure warrant.

83.   During the execution of Naicom's search warrant the defendant Lance Lange ordered Naicom's staff member Yamila Garcia to open the doors of

35

Artist Designs and Management Corporation Office located at **Suite 207**, which was not included in the Search Warrant, and for which defendant Lance Lange did not have a search warrant, and entered its premises in the company of defendants Bert Eichhorn and Emily Wrinkle acting as federal agents and executed a warrantless search, seizing from Victor Vega and Artist Designs and Management Corporation private and confidential documents.

84. During the execution of the search and seizure warrant the defendant Bert Eichhorn acting as a federal agent appropriated himself of keys belonging Victor Vega and Darwin Quinones from Naicom's and Artist Designs' Offices in the presence of defendant Lance Lange.

85. During the execution of the search and seizure warrant the defendants Bert Eichhorn and Emily Wrinkle acting as federal agents entered Naicom's business office without the supervision of the FBI Agents, and searched, inspected and photographed private documents containing business trade secrets and intellectual property information belonging to the company.

86. During the execution of the search and seizure warrant the defendants Bert Eichhorn and Emily Wrinkle acting as federal agents entered the office belonging to Victor Vega at Naicom without the supervision of the FBI Agents, and searched, inspected and photographed private documents containing

business trade secrets and intellectual property information belonging to the company.

87. During the execution of the search and seizure warrant the defendant Bert Eichhorn acting as a federal agent was observed accessing Naicom's computers and searching, reading and photographing its contents which contained business trade secrets and intellectual property information belonging to the company.

88. During the execution of the search and seizure warrant workers from other offices in the building witnessed the embarrassment that these defendants subjected Naicom employees.

89. In the aftermath of the execution of the search warrant defendant Lance Lange in combination with defendants Bert Eichhorn and Emily Wrinkle acting as federal agents seized from the Plaintiffs documents, 2 Hard Drives, 2 USB Thumb Drives, Cell Phone and 1 Tablet containing business trade secrets and intellectual property information belonging to the company.

90. On August 27, 2019, the defendants Kevin Pearson and several unknown agents of the FBI in the company of defendants Jordan Smith and Kevin Gedeon acting as federal agents entered Naicom Corporation's Data Center to execute the search warrant.

91. During the execution of the search and seizure warrant Darwin Quinones observed that the defendant Kevin Pearson allowed the defendants Jordan Smith,

Kevin Gedeon acting as federal agents to access and perform a search into Naicom's Data Center Computers, Servers and other electronic Hardware containing business trade secrets and intellectual property information belonging to the company, and to take pictures of Naicom's Data Center structural and network connection platform.

92. During the execution of the search and seizure warrant Darwin Quinones and Naicom's employee Jaime Echevarria were questioned and interrogated by the defendant Kevin Reaves and defendants Jordan Smith, Kevin Gedeon acting as federal agents regarding the technology which distributed the programming, its functions and protocols.

93. During the execution of the search and seizure warrant Darwin requested defendant Kevin Pearson an opportunity to demonstrate to him that he was running a legitimate IPTV operation and was allowed to call Linda Kosher from the National Rural Telecommunication Cooperative who assured defendant Kevin Pearson that Naicom was authorized to distribute the programming content via the Naicom TV Home Set Top Box to his registered subscribers.

94. The defendant Kevin Pearson decided to call defendant AUSA Nicholas W. Cannon and informed him that they did not find any evidence indicating that Darwin Quinones was running an IPTV pirate distribution and assured him that it appeared that Naicom was a legitimate company.

95. The defendant AUSA Nicholas W. Cannon instructed defendant Kevin Reaves to

instruct Darwin Quinones and Victor Vega to report at the FBI Offices in San Juan with the licensing contracts for an interview regarding Naicom's company.

96. At the San Juan FBI offices defendant Kevin Pearson, and the defendants Jordan Smith and Kevin Gedeon acting as federal agents questioned Darwin Quinones in the presence of Naicom's legal Attorney Patricia Rivera as to how Naicom acquired the IPTV distribution contracts with the content providers and the technology to distribute the programing via private networks and the internet.

97. During the interview, Darwin Quinones questioned defendant Kevin Reaves if the defendants Jordan Smith and Kevin Gedeon acting as federal agents were employees from his competition for the line of questioning they were posing to him, and defendant Kevin Pearson assured Darwin Quinones in the presence of his Attorney Patricia Rivera that defendants Jordan Smith and Kevin Gedeon were expert workers of the FBI, and provided Darwin Quinones the identities of Jordan Smith and Kevin Gedeon. However, Bert Eichhorn and Emily Wrinkle refused to provide their identities.

98. At this time Victor Vega requested permission to terminate the interview due to the intensive interrogation of defendants Jordan Smith and Kevin Gedeon and departed the FBI Offices.

## VI.  THE WARRANTLESS SEARCH AND SEIZURE EXECUTED AT NAICOM'S DATA CENTER.

99. On August 29, 2019 defendants Lance Lange, Kevin Pearson in the company of defendants Jordan Smith and Kevin Gedeon acting as federal agents returned to Naicom's Data Center and secretly without authorization entered its premises located at Villa Fontana, 4SS N2 Via Josefina, Carolina, PR 00983 to execute a second search this time without a warrant or any exception to the warrant requirement.

100. After searching the Data Center for prolonged hours the defendant Kevin Pearson decided to contact Naicom employee Jaime Echevarria at his cell phone and ordered him to show up at the Data Center because he wanted to interrogate him, Darwin and Victor.

101. Upon arriving at Data Center Darwin Quinones observed defendants Jordan Smith and Kevin Gedeon acting as federal agents accessing Naicom's Data Center computers, servers, and other hardware equipment without authorization.

102. During the execution of the warrantless search the defendants Kevin Pearson and Lance Lange began to pressure Darwin Quinones to sign a hold harmless document accepting that he was running a pirate operation in the past so that they could close the case or else his boss had given him the order to turn shut down the Data Center operation.

103. Darwin Quinones rejected the proposition outright, and defendants Kevin Pearson and Lance Lange implored Darwin Quinones to sign the document so that they

could close the case or else they were going to have problems, but Darwin Quinones again refused to do so.

104. Sometime thereafter, Victor Vega showed up at the scene and upon entering the Data Center asked defendants Kevin Pearson and Lance Lange if they had another search warrant to enter and search again Data Center, the defendant Lance Lange represented to Victor Vega that the search warrant gave him ten (10) days to come in and out and search the Data Center.  Victor Vega reacted and warned defendant Lance Lange to leave Naicom's Data Center premises because he was violating the United States Constitution and Federal law.

105. At this time, Victor Vega informed defendants Kevin Pearson and Lance Lange that he had already discovered via LinkedIn that the alleged FBI experts which executed the search and seizure warrants at Naicom, Artist Designs, Kiaras, LLC and Naicom's Data Center, and whom interrogated him and Darwin Quinones at the FBI Offices were Kevin Gedeon, investigator of Dish Network and Jordan Smith, Bert Eichhorn and Emily Wrinkle investigators of NagraStar.

106. Victor Vega also questioned the defendants Lance Lange and Kevin Pearson as to why they brought his competition to search, inspect and photograph private documents and allowed them to access computers and servers containing trade secrets codes sources, business and intellectual property information belonging to the company.

107. The defendants insisted to continue with the execution of the warrantless search

and Victor Vega called his Attorney and notified him that the FBI agents were executing a second warrantless search and seizure at Naicom's Data Center, and after speaking to defendant Lance Lange, the defendants left the premises.

## VII.    THE DEMAND FOR RETURN OF PROPERTY UNDER RULE 41(G) AFTERMATH.

108.    On September 6, 2019, a Motion for DEMAND for Return of Seized Property was filed Pursuant to Federal Rules of Criminal Procedure 41(g) ("The Rule 41(g) Motion") by Rafael F. Castro-Lang on behalf of Artist Designs and Management Corporation, Kiaras, LLC, Naicom Corporation, Naicom Data Center, Darwin Quinones-Pimentel, Victor Vega-Encarnacion ("The Plaintiffs").   [D.E. 1 Civil Docket 3:19-mc-00308-FAB].

109.    In the Rule 41(g) Motion the Plaintiff's contended that the Search and Seizure was unlawful and illegally issued because (1) it contained deliberately and reckless false statements made under oath and affirmation to secure its issuance by the Magistrate Judge; (2) and therefore was issued in violation of the Fourth Amendment; (3) requiring the immediate return of all the property seized.

110.    Furthermore, the Rule 41(g) Motion contained independent evidence in the form of attachments of Naicom's Corporation contracts authorizing the distribution of content programming in Puerto Rico, United States and the Virgin Islands, and evidence disproving that the defendant never called HBO or NRTC inquiring about Naicom, and evidence disproving any money laundering activities, and that the criminal investigation was nothing more than a ruse orchestrated by Nagrastar

42

and Dish Network to use the Federal Bureau of Investigations as an instrument to enter Naicom Corporation and the Data Center through a search warrant and misappropriate themselves with Naicom's trade secrets and intellectual property. [D.E. 1 Civil Docket 3:19-mc-00308-FAB].

111. On October 15, 2019, The United States filed an unopposed response to Plaintiff's Rule 41(g) Motion, stating that without conceding any arguments raised, the property items listed in his request would be returned. [D.E. 9-page 1 Civil Docket 3:19-mc-00308-FAB].

112. On November 5, 2019, the District Court granted Plaintiff's Rule 41(g) Motion and entered the following ("ORDER re 12 Notice (Other), re 10 Report and Recommendation, re 1 Motion for Return of Property: NOTED. Claimant having waived the 14-day period to file objections to the Report and Recommendation (R&R), the Court ADOPTS the R&R and *orders the government to return the property listed in claimant's demand*. (Docket No. 1)" pursuant to Rule 41 of the Federal Rules of Criminal Procedures. [D.E. 12 and 13 Civil Docket 3:19-mc-00308-FAB].

113. The Government never opposed nor denied that the underlying basis for the search warrant were false and the search warrant against plaintiffs'was dismissed on the government's own motion. [D.E. 9-page 1 Civil Docket 3:19-mc-00308-FAB].

114. On February 19, 2020, defendant Lance Lange received at the FBI Offices in San Juan, Darwin Quinones, Victor Vega, and Attorney Rafael Castro Lang to have the

items seized returned to Plaintiffs.   At the meeting, defendant Lance Lange returned what he alleged were items defendants seized from the search warrant and provided Victor Vega an FBI document printed from http://sentinel.fbinet.fbi/aps/serialsclient/index-serialpreview.html titled Document Search Warrant Execution at Naicom Corporation Headquarters disclosing the details of the search warrant and the identities of the FBI Agents that participated in the investigation and the search warrant's execution and the items that were seized during its execution.

## VIII.   THE SIGNIFICANT HARM INFLICTED UPON THE PLAINTIFFS.

115. The defendant's intrusion into Victor Vega, Darwin Quinones, Naicom Corporation, the Data Center, Artist Designs and Management Corporation, and Kiaras, LLC privacy and business under the ruse of a criminal investigation caused significant damages to Plaintiffs.

116. Prior to the execution of the search warrants, the Plaintiffs' enjoyed a great reputation and were about to close an investment deal of $15,000,000 dollars to advance Naicom's goals to the next level of launching the brand in the United States by 2019 in the States of Florida and New York.

117. When the investors found out that Naicom Corporation and its executive officers were under criminal investigation and that their offices were raided by the FBI, the investors emailed Darwin Quinones that they were abandoning the negotiations due to the pending criminal investigation.

118. Naicom Corporation was also about to close a multimillion deal contract with Claro Puerto Rico by August 2018.   When the executive officers of Claro Puerto Rico found out through Dish Network that the FBI was investigating Naicom Corporation and that their executive officers were about to be arrested and prosecuted, and Naicom was about to be dismantled for running an illegal IPTV pirate content distribution operation,  Claro Puerto Rico pulled out of the negotiations and never again contacted Naicom's executive officers to renew them.

119. In the aftermath of the search warrant execution of the Naicom's Data Center, Naicom lost a great deal of subscribers because of the negative reputation caused by the defendants.   Furthermore, the defendants intrusion into Naicom's Data Center computers, servers and other equipment caused enormous damages to the Data Center computer's and server's system leaving many subscribers without tv programming services for weeks.

## CAUSE OF ACTION

## COUNT ONE

### THE DEFENDANT VIOLATED PLAINTIFFS RIGHTS TO BE FREE FROM UNREASONABLE SEARCH AND SEIZURES IN VIOLATION OF THE FOURTH AND FIFTH AMENDMENT TO THE UNITED STATES CONSTITUTION

For this cause of action in Count One, the plaintiff alleges the following:

120.   By this reference, the plaintiff incorporates each and every allegation contained in ¶'s  1 through 119 as though fully set forth herein.

121.   The Fourth Amendment of the United States Constitution guarantees: *"the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable*

*searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.* U.S. Const. Amend. IV.

122. In <u>Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics,</u> 403 U.S. 388, 91 S. Ct. 1999, 29 L. Ed. 2d 619 (1971), it was clearly established by the Supreme Court that a violation of a person's Fourth Amendment rights by federal officers, acting under color of federal law, gives rise to a federal cause of action for damages for the unconstitutional conduct and victims of such violation have a right to recover damages against the officer in federal court.

123. In <u>Franks v. Delaware</u>, 438 U.S. 154, 164, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978), the Supreme Court established that the use of false statements to obtain a search warrant violates the Fourth Amendment warrant requirement.

124. The defendants Nicholas W. Cannon, and Several unknown AUSA Supervisors, Douglas A. Leff, Brad Rex, Lance Lange, Kevin Reaves, Andrew Baker, Chris Kuhn, Celia Mahler, Clay Rehrig, Noah Eames, Justin Turner, Mark Etheridge, Clint Nafay, Juan Galarza, Jason Lopez, and Several Unknown Named Agents of Federal Bureau of Investigations, are liable because they knew or should have known that they should have investigated and corroborated the evidence provided by defendants Jordan Smith, Kevin Gedeon, Bert Eichhorn and Emily Wrinkle prior to assenting to defendant Lance Lange using the false statement contained in his Affidavit in support of the search warrant

application in violation of Plaintiffs constitutional rights to be free from unreasonable searches and seizures as secured under the Fourth Amendment to the United States Constitution.

125. The defendants Nicholas W. Cannon, and Several unknown AUSA Supervisors, Douglas A. Leff, Brad Rex, Lance Lange, Kevin Reaves, Andrew Baker, Chris Kuhn, Celia Mahler, Clay Rehrig, Noah Eames, Justin Turner, Mark Etheridge, Clint Nafay, Juan Galarza, Jason Lopez, and Several Unknown Named Agents of Federal Bureau of Investigations, are furthermore liable because they knew or should have known that the Magistrate Judge was going to rely on the assurance of the defendant Nicholas W. Cannon signature in the search warrant application satisfied the constitutional probable cause standard and that defendant Lance Lange's affidavit filed under oath and affirmation was going to assure the Magistrate Judge that she was free to rely in its veracity and issue the Search Warrant which culminated in the intrusion of Plaintiffs business and personal privacy and the seizure of Plaintiffs' business and personal effects in violation of Plaintiffs rights to be free from unreasonable search and seizures as secured under the Fourth Amendment of the United States Constitution.

126. The defendants Jordan Smith, Kevin Gedeon, Bert Eichhorn, Emily Wrinkle and Nicholas W. Cannon are liable because they wrongfully targeted Plaintiffs

47

into a criminal investigation knowing that that the defendants, several unknown AUSA Supervisors, Douglas A. Leff, Brad Rex, Lance Lange, Kevin Reaves, Andrew Baker, Chris Kuhn, Celia Mahler, Clay Rehrig, Noah Eames, Justin Turner, Mark Etheridge, Clint Nafay, Juan Galarza, Jason Lopez, and Several Unknown Named Agents of Federal Bureau of Investigations were going to target, investigate and prosecute Plaintiffs based on the evidence they provided in violation of plaintiff's rights to be free from unreasonable prosecution and search and seizures as secured under the Fourth and Fifth Amendment of the United States Constitution.

127. The defendants Jordan Smith, Kevin Gedeon, Bert Eichhorn and Emily Wrinkle are furthermore liable because they acted as federal agents in combination with defendants Nicholas W. Cannon, Several unknown AUSA Supervisors, Douglas A. Leff, Brad Rex, Lance Lange, Kevin Reaves, Andrew Baker, Chris Kuhn, Celia Mahler, Clay Rehrig, Noah Eames, Justin Turner, Mark Etheridge, Clint Nafay, Juan Galarza, Jason Lopez, and Several Unknown Named Agents of Federal Bureau of Investigations during the investigation, prosecution and the unlawful execution of the search and seizure which resulted in the violation of the Plaintiffs rights to be from unreasonable search and seizures as secured under the Fourth Amendment of the United States Constitution.

48

128.   The defendants Nicholas W. Cannon,  Several unknown AUSA Supervisors, Douglas A. Leff, Brad Rex, Lance Lange, Kevin Reaves, Andrew Baker, Chris Kuhn, Celia Mahler, Clay Rehrig, Noah Eames, Justin Turner, Mark Etheridge, Clint Nafay, Juan Galarza, Jason Lopez, and Several Unknown Named Agents of Federal Bureau of Investigations, Jordan Smith, Kevin Gedeon, Bert Eichhorn and Emily Wrinkle  unlawful  actions  deprived   Plaintiffs  of  their  right  to be free from unreasonable  searches  as secured  under  the Fourth  Amendment  to the United  States  Constitution,

129.  As a direct and proximate result of the conduct of defendants collectively, Plaintiffs' suffered substantial damages, including loss of liberty, invasion of privacy, substantial emotional distress, loss of reputation, and physical harms caused by the emotional distress, including difficulty sleeping, nightmares, difficulty focusing on daily tasks, and changed behavior in their work practices.  In addition, Plaintiffs have suffered substantial economic damage, including loss of income and future earnings, potential business contracts, costs and expenses in defending against false criminal charges.   Plaintiffs suffered the unwarranted search and seizure of their personal effects in violation of their Fourth and Fifth Amendment right to be free from and unreasonable search and seizures.

## COUNT TWO

## THE DEFENDANTS VIOLATED THE PLAINTIFFS RIGHT TO BE FREE FROM WARRANTLESS SEARCH AND SEIZURES IN VIOLATION OF THE FOURTH AMENDMENT TO THE UNITED STATES CONSTITUTION

130. For his cause of action in Count Two, the plaintiffs allege the following:

131. By this reference, the plaintiff incorporates each and every allegation contained in ¶'s 1 through 129 as though fully set forth herein.

132. The Fourth Amendment of the United States Constitution guarantees: "*the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.* "

133. The Fourth Amendment states unambiguously that "*no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing **the place to be searched**, and the persons or things to be seized.*"   The first clause of the Fourth Amendment, the Reasonableness Clause, provides an overriding check on criminal investigations by the government, prohibiting all "unreasonable searches and seizures." See Soldal v. Cook County, 506 U.S. 56, 63, 113 S.Ct. 538, 121 L.Ed.2d 450 (1992); Go–Bart Importing Co. v. United States, 282 U.S. 344, 357, 51 S.Ct. 153, 75 L.Ed. 374 (1931). The second clause, the Warrant Clause, explains the process for obtaining a warrant to authorize a search. See Maryland v. Garrison, 480 U.S. 79, 84–85, 107 S.Ct. 1013, 94 L.Ed.2d 72 (1987); United States v. Leon, 468 U.S. 897, 914, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984). And a search of a residence or building without a warrant is "presumptively unreasonable," Payton v. New York, 445 U.S. 573, 586, 100 S.Ct. 1371, 63

L.Ed.2d 639 (1980).  See Marshall v. Barlow's, Inc., 436 U.S. 307, 311, 98 S.Ct. 1816, 56 L.Ed.2d 305 (1978) ("The Warrant Clause of the Fourth Amendment protects commercial buildings as well as private homes.").

134. In Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388, 91 S. Ct. 1999, 29 L. Ed. 2d 619 (1971), the Supreme Court established that a violation of a person's Fourth Amendment rights by federal officers, acting under color of federal law, gives rise to a federal cause of action for damages for the unconstitutional conduct and victims of such violation have a right to recover damages against the officer in federal court.

135. The defendants Brad Rex, Lance Lange, Kevin Reaves, Andrew Baker, Chris Kuhn, Celia Mahler, Clay Rehrig, Noah Eames, Justin Turner, Mark Etheridge, Clint Nafay,  Juan Galarza, Jason Lopez,  Several Unknown Named Agents of Federal Bureau of Investigations,  Kevin Gedeon, Jordan Smith,  Bert Eichhorn and Kimberly Wrinkle  are liable because they knew, or should have known, that without a search warrant  they could not enter and search the premises of Artist Designs and Management Corporation offices located at Building Centro de Seguros, 701 Ave. Ponce de Leon,  at **Suite 207,** San Juan, Puerto Rico, 00907 and still ordered Naicom's employee Yamila Garcia to open the office doors of Artist Designs and Management Corporation and entered and executed a warrantless search which resulted in the invasion of Plaintiffs and business privacy and the seizure of private documents in violation of Plaintiffs' rights to be free from

warrantless searches as secured under the Fourth Amendment of the United States Constitution.

136. As a direct and proximate result of the conduct of defendants collectively, Plaintiffs' suffered substantial damages, including loss of liberty, invasion of privacy, substantial emotional distress and harm, loss of reputation, and physical harms caused by the emotional distress, including difficulty sleeping, nightmares, difficulty focusing on daily tasks, and changed behavior in work practices. In addition, Plaintiffs' have suffered substantial economic damage, including loss of income and loss of future earnings, and costs and expenses in defending against false criminal charges.   Plaintiffs suffered an unlawful search of their personal effects, in violation of their Fourth Amendment right to be free from warrantless searches and seizures.

## COUNT THREE

### THE DEFENDANTS VIOLATED THE PLAINTIFFS RIGHT TO BE FREE FROM WARRANTLESS SEARCH AND SEIZURES IN VIOLATION OF THE FOURTH AMENDMENT TO THE UNITED STATES CONSTITUTION

137. For his cause of action in Count Three, the plaintiffs allege the following:

138. By this reference, the plaintiff incorporates each and every allegation contained in ¶'s 1 through 136 as though fully set forth herein.

139. The Fourth Amendment states unambiguously that "*no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing* **the place to be searched**, *and the persons or things to be seized.*"   The first clause of the Fourth Amendment, the Reasonableness Clause, provides an overriding check

on criminal investigations by the government, prohibiting all "unreasonable searches and seizures." See Soldal v. Cook County, 506 U.S. 56, 63, 113 S.Ct. 538, 121 L.Ed.2d 450 (1992); Go–Bart Importing Co. v. United States, 282 U.S. 344, 357, 51 S.Ct. 153, 75 L.Ed. 374 (1931). The second clause, the Warrant Clause, explains the process for obtaining a warrant to authorize a search. See Maryland v. Garrison, 480 U.S. 79, 84–85, 107 S.Ct. 1013, 94 L.Ed.2d 72 (1987); United States v. Leon, 468 U.S. 897, 914, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984). And a search of a residence or building without a warrant is "presumptively unreasonable," Payton v. New York, 445 U.S. 573, 586, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980). See Marshall v. Barlow's, Inc., 436 U.S. 307, 311, 98 S.Ct. 1816, 56 L.Ed.2d 305 (1978) ("The Warrant Clause of the Fourth Amendment protects commercial buildings as well as private homes.").

140. In Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388, 91 S. Ct. 1999, 29 L. Ed. 2d 619 (1971), the Supreme Court established that a violation of a person's Fourth Amendment rights by federal officers, acting under color of federal law, gives rise to a federal cause of action for damages for the unconstitutional conduct and victims of such violation have a right to recover damages against the officer in federal court.

141. Defendants Lance Lange, Kevin Reaves, Jordan Smith, Kevin Gedeon, Bert Eichhorn are liable because they knew or should have known that they were not authorized to enter On August 29, 2019, the premises of Naicom's Data Center premises located at Villa Fontana, 4SS N2 Via Josefina, Carolina, PR 00983, and

execute the second warrantless search, unless the search warrant was issued by a judicial magistrate, based on probable cause, supported by a sworn affidavit, describing particularly the place of the search, and the persons and the things to be seized, and still executed the warrantless search invading Plaintiffs and business privacy and personal effects in violation of Plaintiffs rights to be free from warrantless search as secured under the Fourth Amendment to the United States Constitution.

142. Defendants Lance Lange, Kevin Reaves, Jordan Smith, Kevin Gedeon, Bert Eichhorn are furthermore liable because the warrantless search resulted in the unlawful and unauthorized access intrusion into Plaintiffs' computers, servers and other hardware equipment containing business and intellectual property trade secrets belonging the Plaintiffs in violation of Plaintiff's rights to be free from warrantless search and seizures as secured under the Fourth Amendment of the United States Constitution.

143. As a direct and proximate result of the conduct of defendants collectively, Plaintiffs' suffered substantial damages, including loss of liberty, invasion of privacy, substantial emotional distress and harm, loss of reputation, and physical harms caused by the emotional distress, including difficulty sleeping, nightmares, difficulty focusing on daily tasks, and changed behavior in work practices. In addition, Plaintiffs' has suffered substantial economic damage, including loss of income and loss of future earnings, and costs and expenses in defending against false criminal charges, Plaintiffs suffered an unlawful and warrantless search of his

personal effects, in violation of his Fourth Amendment right to be free from and warrantless search and seizures.

## PRAYER FOR RELIEF

Wherefore, plaintiffs respectfully request:

A. Compensatory Damages as to all defendants, individually and jointly and severally in the amount to be proven at trial, in excess of $25,000,000.00.

B. Punitive Damages as to all defendants individually, jointly and severally in the amount to be proven at trial, in excess of $25,000,000.00.

C. Reasonable Attorney fees and costs as to all defendants.

D. Such other and further relief as may appear just and appropriate.

**JURY DEMAND Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff demands trial by jury in this action of all issues so triable.**

Respectfully submitted in District of San Juan, Puerto Rico on this the 25th, day of August 2020.

Plaintiffs' Attorney,

S/*RAFAEL F. CASTRO LANG*
**RAFAEL F. CASTRO LANG**
Attorney for Appellant
**USDC-PR- 128505**
P O Box 9023222
San Juan PR 00902-3222
Tel: (787) 723-3672 - 723-1809
Fax: (787) 725-4133
Email: rafacastrolang@gmail.com
rafacastrolanglaw@gmail.com